## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| VICTORIA SOBOLESKI, | ) | Civil Action No.: 25-cv-11699 |
| *on behalf of herself and* | ) | |
| *others similarly situated*, | ) | Class Action Complaint |
| | ) | |
| Plaintiff, | ) | Jury Trial Demanded |
| | ) | |
| v. | ) | |
| | ) | |
| MCM PRODUCTS USA INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S
### MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS

NOW COMES Plaintiff, Victoria Sobolesky, by and through her attorneys, and respectfully requests this Honorable Court to enter an order denying Defendant MCM Products USA Inc.'s above-entitled motions for the reasons set forth in their underlying brief.

Dated: October 13, 2025          PLAINTIFF, on behalf of herself
                                 and others similarly situated,


                                 */s/ Anthony I. Paronich*
                                 Anthony I. Paronich
                                 Paronich Law, P.C.
                                 350 Lincoln Street, Suite 2400
                                 Hingham, MA 02043
                                 (508) 221-1510
                                 anthony@paronichlaw.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| VICTORIA SOBOLESKI, | ) | |
| *on behalf of herself and* | ) | Civil Action No.: 25-cv-11699 |
| *others similarly situated*, | ) | |
| | ) | Class Action Complaint |
| Plaintiff, | ) | |
| | ) | Jury Trial Demanded |
| v. | ) | |
| | ) | |
| MCM PRODUCTS USA INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.     Whether the Court should deny Defendant's Motion to Dismiss because the Telephone Consumer Protection Act's National Do Not Call Registry provision protects "residential telephone *subscriber[s]*"—not simply *residential telephones*—and the term "residential telephone *subscriber*" encompasses all types of telephone lines and devices (landline and cellular) so long as they are used for personal purposes.

**Suggested Answer**: Yes.

2.     Whether the Court should deny Defendant's Motion to Dismiss because the TCPA's Do Not Call Registry provision prohibits certain "telephone calls" and "telephone solicitation[s]", which both include text messages.

**Suggested Answer**: Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY<br>FOR THE RELIEF SOUGHT</u>

*Dobronski v. 1-800-Law-Firm, PLLC*, 2025 U.S. Dist. LEXIS 91963 (E.D. Mich. Apr. 17, 2025)

*Hubble v. LoanDepot.Com, LLC*, 2025 U.S. Dist. LEXIS 186864 (E.D. Mich. Sep. 23, 2025)

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015)

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018)

*Wilson v. MEDVIDI Inc.,* 2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025)

*Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274 (D. Or. July 21, 2025)

**Table of Contents**

Introduction ................................................................................... 1

Argument ....................................................................................... 3

  I. Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to

Consider the Question Has Held, including the Sixth Circuit ......................... 3

    a. Section 227(c) authorizes the FCC to prohibit unwanted telephone

solicitations of all kinds, including text messages ............................... 4

    b. Just as § 227(c)'s substantive provisions allow the FCC to regulate text

messages, the private right of action in § 227(c)(5) authorizes suit when those

rules are violated ................................................................. 5

    c. Even if the statute left room to doubt that a text message can be a

violation (which it doesn't), the FCC's longstanding interpretation of the word

"call" should still carry the day ................................................. 10

    d. Sixth Circuit Authority—Backed by this Court—Confirms that Text

Messages Are "Calls" Under the TCPA ............................................... 12

  II. Plaintiff Plausibly Pleads Direct Liability .................................. 14

  III. The Complaint Alleges Every Element of a Do Not Call Claim ............ 17

  IV. The Class Allegations Should be Addressed on a Full Record, not

Determined Prior to any Discovery ................................................... 21

Conclusion ...................................................................................... 25

## Table of Authorities

**Cases**

*Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620 (N.D. Iowa 2021) ... 15

*Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021)........ 8

*Bradshaw v. CHW Grp., Inc.*, 2025 U.S. Dist. LEXIS 13649 (D.N.J. 2025) .... 14

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019)23

*Bridging Communities v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) .. 20

*Callier v. Am.-Amicable Life Ins. Co. of Texas*, 2022 WL 17732717 (W.D. Tex. 2022) ................................................................................................................ 19

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ........................................... 7

*Cataldi v. Ocwen Loan Servicing, LLC*, 2017 WL 5903440 (E.D. Mich. 2017) .20

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ............ 2

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .................................................... 22

*Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025) .................. 12

*Dobronski v. 1-800-Law-Firm, PLLC*, 2025 U.S. Dist. LEXIS 91963 (E.D. Mich. 2025) ................................................................................................................. 13

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) ........................................... 8

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ............................. 13

*Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. 2025) .............................. 12

*Hubble v. LoanDepot.Com, LLC*, 2025 U.S. Dist. LEXIS 186864 (E.D. Mich.

2025) .......................................................................................................... 22

*Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025) ........................................ 5

*Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025) ............................ 7

*Jewell v. Magnolia Bank, Inc.*, 2024 U.S. Dist. LEXIS 9206 (W.D. Ky. 2025). 20

*Jones v. Blackstone Medical Servs., LLC*, 2025 WL 2042764 (C.D. Ill. 2025) .. 7

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) .............. 13

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ................. 6, 22

*Lirones v. QuinStreet, Inc.*, 2024 WL 4198134 (N.D. Cal. 2024) ...................... 12

*Lopez v. Consumer Safety Tech., LLC*, 2024 U.S. Dist. LEXIS 84873 (M.D. Fla. 2024) .......................................................................................................... 23

*Lyman v. QuinStreet, Inc.*, 2024 WL 3406992 (N.D. Cal. 2024) ....................... 12

*Marks v. Unique Lifestyle Vacations, LLC*, 2024 U.S. Dist. LEXIS 41804 (E.D. Pa. 2024) ...................................................................................................... 15

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ....................... 5

*Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224 (N.D. Cal. 2024) ...................... 24

*Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575 (6th Cir. 2025) ........ 11

*Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024) ........................ 5

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ................. 5

*Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907 (W.D. Mich. 2018) ........ 12

*Slominski v. Globe Life Inc.*, 2024 U.S. Dist. LEXIS 24378 (E.D.N.C. 2024).. 16

*Smith v. Am.-Amicable Life Ins. Co. of Texas*, 2022 WL 1003762 (E.D. Pa. 2022) .......................................................................................... **14**

*Stemke v. Marc Jones Constr., LLC*, 2021 U.S. Dist. LEXIS 181916 (M.D. Fla. 2021) .......................................................................................... **15**

*Taylor v. Suntuity Solar LLC*, 2024 U.S. Dist. LEXIS 38838 (M.D. Fla. 2024).**15**

*United States v. Paulson*, 68 F.4th 528 (9th Cir. 2023) ...................................... **9**

*Watson v. Am.-Amicable Life Ins. Co.*, 2022 WL 4586407 (S.D.N.Y. 2022) ... **19**

*Williams v. Myler Disab., LLC*, 2020 U.S. Dist. LEXIS 211914 (W.D.N.C. 2020)…………………………………………………………………**8**

*Wilson v. MEDVIDI Inc.*, 2025 U.S. Dist. LEXIS 198827 (N.D. Cal. 2025) ..... **9**

*Wilson v. Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. 2025) .......................... **5**

**Statutes and Regulations**

47 U.S.C. § 227 .......................................................... **1, 3–6, 10, 12, 17**

47 C.F.R. § 64.1200 .................................................... **1, 6, 9, 18**

**Other Authorities**

In re Rules and Regulations Implementing the TCPA, 18 F.C.C. Rcd. 14014 (2003) …………………………………………………........................... **1, 10**

In re Targeting and Eliminating Unlawful Text Messages, 38 F.C.C. Rcd. 12247 (2023) .................................................................................. **1, 9**

## INTRODUCTION

MCM Products USA Inc. ("MCM") moves to dismiss, arguing the DNC rules don't cover texts, the Plaintiff hasn't plausibly linked MCM to the solicitations at issue, and the class allegations fail. The motion should be denied.

The Telephone Consumer Protection Act's provisions authorizing a nationwide Do Not Call List, 47 U.S.C. § 227(c), empower the FCC to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," *id.* § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list. *Id.* § 227(c)(3)(F). For decades, the FCC has consistently made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. §§ 64.1200(c)(2), (e); *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14037 ¶¶ 33–36 (2003). The FCC has also determined that those provisions authorize it to prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 F.C.C. Rcd. at 14115; *In re Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 (2023).

In the decades since FCC established the Do Not Call List and began enforcing those protections, over 200 million phone subscribers have come to rely on them. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–204 & n.5

1

(S.D.N.Y. 2024). Plaintiff Victoria Soboleski is one of them. So, when Defendant MCM sent her telemarketing texts in willful violation of the FCC's rules, she brought this lawsuit to vindicate those rights and put a stop to MCM's unwelcome and intrusive marketing practices.

And a fresh read of the statutory text confirms that cell phone subscribers are eligible for the Do Not Call List, and that listing their number protects them from intrusive text messages, not just voice calls. MCM asks this Court to substitute its judgment for Congress's and the FCC's largely because in 1991 text messages didn't exist yet. But that is not how statutory interpretation works, and it's contrary to the plain meaning of the terms Congress used.

Plaintiff's allegations also easily satisfy Rule 12(b)(6). She alleges that MCM delivered multiple unsolicited text messages to her personal, residential number despite its registration on the National Do Not Call Registry and despite his lack of consent or any prior relationship with MCM. Those allegations, taken as true, state a plausible claim under §227(c). Whether MCM sent the texts directly or through an agent is a factual question for discovery, not a basis for dismissal.

Finally, Defendant's attempt to strike Plaintiff's class allegations at the pleadings stage is premature and contrary to Rule 23 jurisprudence. Courts overwhelmingly hold that issues of predominance and commonality must be assessed on a developed factual record, not on the face of a complaint.

## ARGUMENT

### I.     Text Messages Are "Calls" Under the TCPA, As Nearly Every Court to Consider the Question Has Held, including the Sixth Circuit.

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 145 S. Ct. 2006 (2025), disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, at n.2 (11th Cir. 2025) ("We use the terms 'robocalls' and 'robotexts' as shorthand for calls and texts made 'using any automatic telephone dialing system or an artificial or prerecorded voice'—*i.e.*, the calls and texts that the TCPA regulates….We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages.").

"The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). "In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020)

(emphasis added). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

### a. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). That definition plainly encompasses modern text messages. More generally, the definition of "telephone solicitation" focuses not on the form of a communication but whether it is made "for the purpose of encouraging" a commercial transaction. *See, e.g.*, *Hulce v. Zipongo, Inc.*, 132 F.4th 493 (7th Cir. 2025).

The purpose and structure of the Do Not Call List provisions supports that interpretation. Congress's stated goal was "to protect residential telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, No. 6:25-cv-376, 2025 WL 2029274, at *4 (D. Or. July 21, 2025). To be sure, as MCM emphasizes, Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But as just explained, the statute *does* explicitly cover any "telephone solicitation," which is expressly defined to include any "call *or message*." 47 U.S.C. § 227(a)(4). It is the meaning of those terms that governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale*, 523 U.S. at 79; *Nat'l Cable & Telecom. Ass'n*, 567 F.3d at 665. "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024) (quoting *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212, (1998)).

> **b. Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.**

Section 227(c)(5) grants a right of action to enforce the Do Not Call List

regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 650 (4th Cir. 2019).

It is well established that the word "call" in the TCPA includes text messages. That meaning of "call" is especially clear in neighboring provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. 102–243, 105 Stat. 2394, § 3(a). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4); *see supra*.[1]

---

[1] Because § 227(c)(1)(D) confirms that the variation between Congress's use of a "call or message" in § 227(a)(4)'s capacious definition and its use of "call" in § 227(c)(5) is immaterial, the one district court that recently relied on this distinction

Similarly, § 227(b)(1)(A), an autodialer provision, uses the word "call" several times to describe a prohibited transmission to both a "cellular telephone" and "a paging service." A typical paging device in the early 1990s would have displayed an incoming message as written text, usually a phone number to call.[2] So those uses of the word "call" must have encompassed both voice and text transmissions, too. MCM heavily relies on *Jones v. Blackstone Medical Services, LLC*, No. 1:24-cv-1074, 2025 WL 2042764 (C.D. Ill. July 21, 2025), but *Jones* is unpersuasive. There, the court held that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at *4.

But that gets statutory interpretation wrong in two important ways. First, as the Supreme Court has warned, "modern intuition" doesn't always match "evidence of a term's meaning at the time of [a statute]'s enactment." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). *Jones* and other cases go astray when they reflexively apply present-day intuitions about how text messages are discussed to

---

to adopt a restrictive interpretation is unpersuasive. *Contra Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025).

[2] *See, e.g.*, **Paging Network, Inc., Annual Report, at 8 (1993)**, available at https://digital.library.mcgill.ca/images/hrcorpreports/pdfs/6/639549.pdf (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number to the subscriber").

language from 1991, before the first text message was ever sent.[3] And second, as explained above, it's irrelevant that Congress didn't have text messages specifically in mind in 1991. *See supra* (citing cases). "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Wilson,* 2025 WL 2029274, at *4.

*Jones* also disregarded the FCC's longstanding interpretation of "call" to include text messages because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the defined term "telephone solicitation," so the standalone word "call" is much more extensively used in § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions. That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); *In re: Targeting and Eliminating Unlawful Text Messages*, 88 Fed. Reg. 20800, 20802 ¶ 6 (2023); *In re: Targeting and Eliminating Unlawful Text Messages*, 38 F.C.C. Rcd. 12247, 12256–57 ¶ 26 (2023). But that

---

[3] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at *1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of text-message-like communication in 1991).

doesn't mean there's any daylight between § 227(b) and § 227(c) on this particular question, and neither *Jones* nor MCM identifies any. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text"). In fact, reading the word "call" differently in § 227(c)(5) than in neighboring provisions would make no sense. *See, e.g.*, 38 F.C.C. Rcd. at 12257 (rejecting that "anomalous" interpretation). If Congress intended to cabin § 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have conveyed that by using a term that elsewhere in the statute *includes* them.

Indeed, just last week, Judge Freeman of the Northern District of California rejected the very same argument in *Wilson v. MEDVIDI Inc.,* 2025 U.S. Dist. LEXIS 198827, at *5-7 (N.D. Cal. Oct. 7, 2025). The court held that "a 'telephone call' as used in § 227(c) encompasses the types of text messages Plaintiff complains of," reasoning that Congress was more concerned with the purpose of the communication than its form, and that it "strains belief" to suggest oral solicitations were invasive but written ones were not. *Id.* at *6-7. The decision emphasized that the statutory text and legislative purpose both compel treating texts as covered "calls." *Id.* at *7.

Wilson therefore reaffirms that § 227(c) reaches text messages, consistent with Supreme Court precedent, FCC regulations, and the weight of circuit authority. This Court should follow the same approach, rejecting Defendant's invitation to

carve out texts from § 227(c).

### c. Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order").

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id*. at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among

10

other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details," accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395. Congress in 1993 asked the FCC to decide whether cell phone companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *McLaughlin*. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165, 2025

11

WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025); *Wilson*, 2025 WL 1784815, at *5;

*Lirones*, 2024 WL 4198134, at *7; *Lyman v. QuinStreet, Inc.*, No. 23-cv-5056, 2024

WL 3406992, at *4 (N.D. Cal. July 12, 2024). This court should do the same.

### d. *Sixth Circuit Authority—Backed by this Court—Confirms that Text Messages Are "Calls" Under the TCPA.*

The transmission of a text message to a consumer's telephone falls squarely

within the definition of the word "call" as the purpose is to communicate with the

person by phone. Moreover, "[b]oth the FCC and the courts have recognized that the

scope of the TCPA naturally evolves in parallel with telecommunications technology

as it evolves, *e.g.*, with the advent of text messages." *Saunders v. Dyck O'Neal, Inc.*,

319 F. Supp. 3d 907, 911 (W.D. Mich. 2018).

The Court in *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638,

*10-13 (D. Or. July 21, 2025) denied an identical motion to dismiss holding, "It

cannot be argued in good faith that text messages are so categorially different from

phone calls that the former cannot be considered an invasion of consumer privacy

when directed at numbers on the DNC Registry.. . . On this point, Defendant is

without support. The Court concludes that unsolicited text messages sent in

violation of the DNC Registry can give rise to a cause of action under § 227(c)(5)."

Defendant's request to exclude text messages from the protections afforded

consumers under the TCPA also ignores that because "the TCPA is

a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin.*

*Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). The outcome Defendant requests –
allowing companies to spam consumers with unwanted texts even after requests for
the messages to stop – would result in harm that Circuit courts have found is real
and concrete. Luckily for consumers in Michigan, the Sixth Circuit and Judge
Altman have addressed this issue.

Most recently, Judge Altman of the Eastern District of Michigan emphasized
in *Dobronski v. 1-800-Law-Firm, PLLC*, 2025 U.S. Dist. LEXIS 91963, at *11 (E.D.
Mich. Apr. 17, 2025), that "text message communications are covered as 'calls'
under the TCPA," citing directly to binding Sixth Circuit authority. Judge Altman's
analysis is particularly persuasive here, as it reflects the approach of this District in
denying a motion to dismiss TCPA claims predicated on unsolicited text messages.

That conclusion flows directly from the Sixth Circuit's holding in *Keating v.
Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015), where the Court of
Appeals expressly held that "a text message sent to a recipient's cell phone was a
'call' within the meaning of the TCPA." The Sixth Circuit explained that Congress
had not addressed text messaging in 1991, but the FCC reasonably interpreted the
Act to encompass SMS messages, and "[w]e thus unhesitatingly afford deference to
the agency holding that a text message should be treated as a 'call' for purposes of
the TCPA." *Id.* at 371.

Together, *Dobronski* and *Keating* eliminate any doubt that Plaintiff's

13

allegations fall within the scope of § 227(c). Indeed, this Court has already recognized that unsolicited texts are actionable "calls," and the Sixth Circuit has confirmed that principle is binding throughout this Circuit. Defendant's contrary arguments should be rejected outright.

## II.    Plaintiff Plausibly Pleads Direct Liability

Defendant incorrectly asserts that Plaintiff fails to plausibly allege direct liability. To the contrary, the Complaint provides detailed factual allegations that, taken as true at this stage, readily support a reasonable inference that MCM itself delivered the subject telemarketing text messages. Specifically, Plaintiff includes screenshots of the violative text messages at issue which identify themselves as being from "MCM", display MCM's products, and direct recipients to MCM's website. ECF 1 at ¶ 14.[4]

"At first glance, these allegations seem like a strong basis for attributing the … [calls and text] to the Defendant. After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is." *See Bradshaw v. CHW Grp., Inc.*, No. 24-cv-

---

[4] Defendant's suggestion that Plaintiff cannot have treated this number as "residential" because she previously identified a different personal number misses the point: the TCPA protects *residential subscribers*, not a single, immutable line, and households may maintain multiple personal numbers. This line was primarily obtained for Plaintiff's minor child) to receiveTo the extent the Court desires additional particulars, Plaintiff can and will provide them and respectfully requests leave to amend for that limited purpose.

00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649, at *5-6 (D.N.J. Jan. 24, 2025) ("So too as to the December 8 call. The caller allegedly introduced herself as 'Erica . . . from the Defendant.'  Why then would it not be plausible to conclude that she was, in fact, 'Erica . . . from the Defendant'?").

"The logic of this approach is reflected in the decisions of any number of federal courts.  *See, e.g., Marks v. Unique Lifestyle Vacations, LLC*, 2024 U.S. Dist. LEXIS 41804, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024); *Katz v. CHW Grp., Inc.*, 2023 U.S. Dist. LEXIS 176206, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023); *Smith v. Am.-Amicable Life Ins. Co.*, 2022 U.S. Dist. LEXIS 62115, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022); *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021)." *Id.*; *accord Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694-MSS-AEP, 2024 U.S. Dist. LEXIS 38838, at *15-16 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage. Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, "solar of America."' 'The only real company identified during the calls was Suntuity.'" (cleaned up)); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916,

at *6-7 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls."); *see also Slominski v. Globe Life Inc.*, No. 7:23-CV-1081-D, 2024 U.S. Dist. LEXIS 24378, at *15 (E.D.N.C. Feb. 12, 2024) ("Slominski alleges that on March 14 and March 15, 2023, she received calls and voicemail messages on her cell phone that asked her to call Globe. The voicemail messages concerned 'an insurance plan.' Globe sells insurance plans. … Defendants contend Slominski fails to plausibly attribute the alleged prerecorded voicemail messages to Globe. Slominski, however, plausibly alleges enough information about the contents of the voicemail messages she received on March 14 and March 15, 2023, to survive a motion to dismiss." (cleaned up)).

Ultimately, given Plaintiff's allegations of receiving texts that identified themselves as being from "MCM", advertised MCM's products, and directed

recipients to MCM's website, the only plausible inference at this stage of the proceedings is that MCM itself sent the text messages.

## III. The Complaint Alleges Every Element of a Do Not Call Claim

Defendant's motion to dismiss argues that Plaintiff has failed to allege the basic elements of a Do Not Call claim, but those arguments have been rejected by both the FCC and the courts. Each of Defendant's theories—residential status, personal registration, and an alleged business relationship—has no merit at the pleading stage and are sufficiently alleged.

First, the Plaintiff has adequately pled that the number as a residential telephone line. Plaintiff alleges that her cellular number is her residential line, that she uses it for personal purposes and not for business, and that it has been continuously registered on the National Do Not Call Registry since March 27, 2025 (ECF No. 1 ¶¶ 8–11, 15). These allegations are sufficient to establish Plaintiff as a "residential subscriber" entitled to the TCPA's protections. *Compare Gill v. Align Tech., Inc.*, 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wisc. May 16, 2022) ("Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is registered on the do-not-call list is sufficient to allege that the phone was residential use.") *with Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, at *12 (E.D. Va. Aug. 6, 2020) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry—which

appears to be undisputed—but his argument never returns to the facts of this case or the use of his phone. Perhaps easily addressed by amendment, this is another example of inadequate factual support for Plaintiff's claims.").

Second, the provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. Not surprisingly several courts have rejected this argument and only one has adopted it, *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022). The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Watson*, No. 20 CIV. 4572

18

(LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (holding that "whether each class member registered their number on the NDNCR is irrelevant.").

*Rombough* has been rejected by a multitude of courts, including in *Abrahamian v. loanDepot.com LLC,* 2024 U.S. Dist. LEXIS 44009, *5-6 (D. Ariz. March 13, 2024):

> The Court is not bound by this case. Moreover, the Court finds the complete language of the implementing regulation more instructive. *See* 47 C.F.R. § 64.1200(c)(2). Though the regulation states that it applies to a "residential telephone subscriber who has registered his or her number" on the DNC Registry, it goes on to require that DNC registrations "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

> The Court reads this language to mean that as phone numbers change hands, the DNC Registry may not always reflect which consumers requested to be included. Therefore, the Court finds that the language includes the term "indefinitely" to remove the ambiguity of which numbers should be protected. Furthermore, the Ninth Circuit takes a broad view of this regulatory language. *See Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 988-91(9th Cir. 2023) (applying the TCPA even when unsolicited calls or texts are intended for or solicited by another individual or someone else using the phone at the time).

As a result, there is no requirement that an individual personally register their number on the Do Not Call Registry.

Finally, whether an established business relationship exists is an affirmative defense, not an element of Plaintiff's prima facie case. The Sixth Circuit has recognized that the "possibility of consent … and/or prior existing business relationships" is properly raised as a defense to liability under the TCPA, not

something a plaintiff must negate in a complaint. *Bridging Communities v. Top Flite Finan. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016). Other courts have confirmed the same. See *Jewell v. Magnolia Bank, Inc.*, 2024 U.S. Dist. LEXIS 9206, *6 (W.D. Ky. Jan. 18, 2025) (holding that consent and prior relationship issues are affirmative defenses not appropriately decided on a motion to dismiss).

Defendant cites this Court's decision in *Cataldi v. Ocwen Loan Servicing, LLC,* 2017 WL 5903440, at *2 (E.D. Mich. Nov. 30, 2017), as support. But that case involved a revocation of consent claim under § 227(b), where the plaintiff herself conceded that consent initially existed and therefore had to plead facts showing its subsequent revocation. That is not the situation here. Plaintiff Soboleski has not alleged that she ever consented to receive MCM's texts—indeed, she affirmatively alleges the opposite, that she "never provided her number to Defendant and never consented to receive telemarketing messages" (ECF No. 1 ¶¶ 19–22). Thus, the reasoning of *Ocwen* does not apply: this is a DNC claim under § 227(c), where Plaintiff alleges no consent ever existed. These facts, taken as true, demonstrate both that Plaintiff qualifies for protection under the TCPA and that no business relationship with Defendant existed.

Taken together, Plaintiff's allegations of residential use, continuous registration on the National DNC Registry, and absence of consent or any business relationship are more than sufficient to state a claim under § 227(c). Defendant's

motion should therefore be denied.

IV.   **The Class Allegations Should be Addressed on a Full Record, not Determined Prior to any Discovery.**

As Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").[5]

Uniform texting campaigns, centralized consent and opt-out records, and Do Not Call scrubbing procedures are common forms of proof that regularly drive Rule 23 analysis in TCPA litigation. Whether those forms of evidence demonstrate commonality and predominance can only be determined after discovery, not at the pleading stage. As the Supreme Court has explained, class certification is an evidentiary determination that "may require the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). As Judge Ludington held last month in denying a

---

[5] And this remains true for "wrong or reassigned" number TCPA class actions like this one. *See, e.g.*, *Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGL, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025) (certifying TCPA class defined nearly identically to Ms. Carr's proposed class here); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (same).

similar motion to strike class allegations in a TCPA case, "pre-discovery motions to strike class allegations are disfavored. Such motions are granted only in the narrow circumstance where it is impossible to certify the defined class, regardless of what facts might emerge in discovery". *Hubble v. LoanDepot.Com, LLC*, 2025 U.S. Dist. LEXIS 186864, *5 (E.D. Mich. Sep. 23, 2025).

Defendant's argument focuses on a potential affirmative defense of consent or established business relationship (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, Judge Ludington held:

> it is not impossible to certify a TCPA class with a definition that does not expressly exclude telecommunication recipients who "solicited or consented to receiving the challenged" communications. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1123-26 (6th Cir. 2016). Indeed, discovery could reveal "a class-wide absence of consent," *id.* at 1125, which would ultimately moot Defendant's consent concerns. In other words, further "factual development" could alter the certification analysis, which counsels heavily against striking Plaintiff's class allegations at the pleading stage.

*Id.* at *8-9. Plaintiff's proposed class definition is also not a "fail-safe" class. A fail-safe class is one that defines membership by reference to the ultimate merits of liability—for example, limiting the class to "those who received unlawful calls without consent." The Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the

class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. Nor does the determination of the consent issue necessitate thousands of individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014).

Second, before any discovery has taken place, Defendant claims that Plaintiff's class allegations should be stricken and that no court could ever certify a case under the TCPA's National Do Not Call Registry provision because the determination of whether a number is residential would need to be made on a case-by-case basis. Luckily for consumers bombarded with unwanted telemarketing calls despite their numbers being registered on the National Do Not Call Registry, this is not the case as the majority of courts to address this issue at the pleadings stage have found arguments like Defendant's argument to be premature at best. *See, e.g., Lopez v. Consumer Safety Tech., LLC*, No. 8:24-cv-150-WFJ-AAS, 2024 U.S. Dist. LEXIS 84873, at *14 (M.D. Fla. May 10, 2024) ("The instant matter is not before the Court on a Rule 23 motion to certify. Instead, Intoxalock brings a Rule 12(f) Motion to Strike at an early stage of proceedings, before discovery has taken place. Nothing in the Amended Complaint indicates that a large portion of the class members'

telephone numbers are nonresidential"); *see also Williams v. PillPack LLC*, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496, at *19-20 (W.D. Wash. Feb. 12, 2021) (granting class certification: "Defendant likewise maintains that Plaintiff has not proposed a reliable means of identifying residential phone numbers without individual inquiry. … Plaintiff's expert excluded from the list of proposed Class members 'all telephone numbers that were associated with any types of business and/or government' using LexisNexis data, and proposed other methods to 'cross-check the business identification process.' … Plaintiff's method reliably excludes non-residential numbers from the proposed Class list."). As a result, the need to ultimately determine whether the reassigned, National Do Not Call Registry registered telephone numbers Defendant sent text messages to were residential or business numbers is not a basis to deny class certification at this or any other stage.

The cases Defendant cites do not support a different conclusion. For example, *Payne v. Sieva Networks, Inc.,* 347 F.R.D. 224, 227 (N.D. Cal. July 29, 2024), arose from text messages directed to owners of trucking businesses who had used their telephone numbers to register their trucking business with the Department of Transportation—including the plaintiff. In granting the defendant's motion to strike, the court relied on undisputed evidence that the defendant "target[ed] trucking businesses that ha[d] registered with the USDOT" and the plaintiff failed to provide any proof that any telephone number text messages "including what he contend[ed]

[was] his personal cell phone number—[were] registered with the USDOT for any non-business purpose." *Id*.

Furthermore, in *Payne* the court acknowledged that other circumstances certification of classes under the TCPA's National Do Not Call Registry is appropriate, like when the communications are directed towards consumers—like here—in which case expert testimony and databases like Lexis-Nexis could be used to determine whether numbers were residential. *Payne,* 347 F.R.D. at 227. Here, in contrast, Defendants targets consumers for consumer purchases, Plaintiff has never used his number in connection with a business, and there is no evidence that any other putative class member did either. Accordingly, based on the court's analysis in *Payne*, Defendant's premature and otherwise unsupported motion to strike Plaintiff's class allegations should be denied.

## Conclusion

Plaintiff alleges a DNC-registered residential number, multiple marketing texts more than 31 days after registration, and no consent—precisely what § 227(c) and 47 C.F.R. § 64.1200(c) prohibit. Binding and persuasive authorities recognize that texts are calls, that wireless subscribers may invoke DNC protections, and that class issues should be resolved on a developed record. Because the Complaint states a claim and the class allegations are properly pled, the Court should deny MCM's Motion to Dismiss in its entirety and allow this case to proceed to discovery.

Dated: October 13, 2025       PLAINTIFF, on behalf of herself
and others similarly situated,


*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com