Case 2:25-cv-11699-DPH-CI   ECF No. 18, PageID.114   Filed 10/27/25   Page 1 of 15

-i-

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

VICTORIA SOBOLESKI, on behalf of herself and others similarly situated,

    Plaintiff,

v.

MCM PRODUCTS USA INC.,

    Defendant.

Case No. 2:25-cv-11699-DPH-CI
District Judge Denise Page Hood
Mag. Judge Curtis Ivy, Jr.

___

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE CERTAIN ALLEGATIONS FROM PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | Section 227(c) of the TCPA Does Not Cover Text Messages. | 1 |
| II. | Plaintiff Fails to Plausibly Allege Any Theory of Liability Against MCM. | 6 |
| III. | Plaintiff Fails to Plausibly Allege Other Elements of Her DNC Claim. | 7 |
| IV. | Alternatively, Plaintiff's Class Allegations Should Be Stricken. | 8 |

## TABLE OF AUTHORITIES

Page

### CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 6

*Barton v. Temescal Wellness, LLC*,
   525 F. Supp. 3d 195 (D. Mass. 2021) ..................................................... 1

*Berman v. Freedom Fin. Network, LLC*,
   400 F. Supp. 3d 964 (N.D. Cal. 2019) .................................................... 9

*Davis v. CVS Pharmacy, Inc.*,
   2025 WL 2491195 (N.D. Fla. Aug. 26, 2025) .................................... 3, 5

*El Sayed v. Naturopathica Holistic Health, Inc.*,
   2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ................................. 3, 4, 6

*Escue v. United Wholesale Mortg., LLC*,
   2025 WL 2807314 (E.D. Mich. Sept. 30, 2025) ..................................... 6

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021) ............................................................................ 1, 3

*Gill v. Align*,
   2025 WL 2966205 (D. Kan. Oct. 21, 2025) ........................................... 7

*Hulce v. Zipongo Inc.*,
   132 F.4th 493 (7th Cir. 2025) .................................................................. 2

*In Re Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the TCPA of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*,
   38 F.C.C. Rcd. 12247 (2023) .................................................................. 4

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ................................................................................ 5

*Nichols v. eHealthInsurance Serv., Inc.*,
   2025 WL 689721 (N.D. Cal. Mar. 3, 2025) ........................................ 8, 9

*Schmitendorf vs. Juicy's Vapor Lounge, Inc.*,
   2025 WL 2966205 (D. Kan. Oct. 21, 2025) ....................................... 9, 10

# TABLE OF AUTHORITIES
(continued)

**Page**

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
   979 F.3d 426 (6th Cir. 2020) ...................................................................................7

*Wilson v. Medvidi Inc.*,
   2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .......................................................5, 6

*Wilson v. Skopos Fin., LLC*,
   2025 WL 2029274 (D. Or. July 21, 2025)................................................................5

*Zyburo v. NCSPlus, Inc.*,
   44 F. Supp. 3d 500 (S.D.N.Y. 2014) ........................................................................9

## STATUTES

47 U.S.C. § 227(a)(4).................................................................................................2, 3

47 U.S.C. § 227(b) .............................................................................................1, 4, 5

47 U.S.C. § 227(c) ...........................................................................................passim

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(f)(15) .......................................................................................8, 9

Plaintiff's Opposition (ECF 14) fails to rebut the grounds for dismissal identified in MCM's Motion to Dismiss and/or Strike (ECF 8) in several ways, as discussed below.[1]

## I. Section 227(c) of the TCPA Does Not Cover Text Messages.

Plaintiff incorrectly contends that "[t]he Supreme Court, every Circuit Court, and the majority of district courts, even after [*McLaughlin*], disagree with Defendant's position" as to whether texts are actionable under Section 227(c). S*ee* ECF 14 at 3. To begin, Plaintiff's authorities evaluate texts under Section 227(b), which is not at issue. *See id*. at 3-4, 13 (citing *Campbell-Ewald Co.*, *Ins. Mktg. Coal. Ltd.*, *Barton*, *Williams, Dobronski*, *Saunders*, *Keating*).[2] Further, the Supreme Court in *Campbell-Ewald* merely assumed, without deciding, that texts were covered. Likewise, in *Facebook, Inc. v. Duguid*, the Supreme Court cited *Campbell-Ewald*, noting that "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages" and reiterating that the Court merely "assume[d] that it does without considering or resolving that issue." 592 U.S. 395, 400 n.2 (2021). Thus, there is no binding 6th Circuit precedent finding Section 227(c) applies to texts.

---

[1] The Court granted leave MCM's request to file its reply brief in excess of the page limit. *See* ECF 16.
[2] While *Barton* involved claims under Section 227(c), the court only analyzed whether text messages were covered under Section 227(b). *See Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198–99 (D. Mass. 2021).

In fact, Plaintiff admits that Section 227(c) does not reference texts by arguing texts are covered because "[t]he statute defines a 'telephone solicitation' in relevant part to mean 'the initiation of a telephone call ***or message*** … transmitted to any person.'" ECF 14 at 4 (citing 47 U.S.C. § 227(a)(4) (emphasis added)). However, this reference to "message" refers to ***artificial or prerecorded voice*** "messages," which were expressly regulated by the TCPA at the time of its enactment. *See* ECF 8 at 7-8. Courts have correctly held that "telephone call or message" as used in Section 227(a)(4) could <u>not</u> have been interpreted to include texts when the TCPA was enacted because texts did not exist. *See id*. at 7-10 (citing *Jones* and *Davis*).

Plaintiff's reliance on *Hulce* is also misplaced, as that case does not interpret the term "message" in Section 227(a)(4) to include "text messages." Nor does it support Plaintiff's argument that the term "telephone solicitation" focuses only on the "purpose" of the message, without regard to the form of communication. Emails, for example, would not be covered even if they "encourage a purchase." Moreover, the *Hulce* court refused to interpret "telephone solicitation" to cover all commercial calls "given Congress's distinct use of these terms [i.e., 'commercial' and 'encouraging the purchase'] in separate TCPA provisions." *See Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025). In other words, the *Hulce* court refused to read substance into the definition of "telephone solicitation" that Congress did not expressly include. Here too, the Court should not read the phrase "telephone call or

-2-

message" to include technology that simply did not exist, and thus Congress could not have contemplated, at the time that phrase was written.

Further, while Plaintiff contends that federal courts may interpret statutes in ways not "expressly anticipated by Congress" (*see* ECF 14 at 5, 7 (citing *Onacle*, *Nat'l Cable*, *Salazar*, and *New Prime Inc.*)), the Supreme Court expressly declined to do so when interpreting the TCPA. *See Facebook*, 592 U.S. at 409.

Plaintiff next argues that use of the word "call" in neighboring provisions somehow demonstrates that Section 227(c) covers texts. *See* ECF 14 at 6-7. Not so. "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [the plaintiff's] position" and "shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195, at *2 (N.D. Fla. Aug. 26, 2025). The *Davis* court went a step further, stating that "[a]lthough [the plaintiff] would have me conclude Congress used the term 'telephone call' in § 227(c)(5) and the term 'telephone call or message' in § 227(a)(4) to have identical meanings, courts should 'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Id*. (citation omitted). The same result is warranted here.

Recently, a district court "agree[d] with and adopt[ed] Judge Winser's opinion [in *Davis*] that 'the statutory text here is clear, and a text message is not a 'telephone

-3-

call.'" *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at \*2 (M.D. Fla. Oct. 24, 2025). The *El Sayed* court correctly recognized that, "[i]n addition to the fact that in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication, the term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent dis-tinction and legislated mindful of the distinction." *Id*. Thus, "[t]he omission of 'text message' from paragraph 227(c)(5) confirms that the provision applies only to a 'telephone call.'" *Id*.

Plaintiff attempts to distinguish *Davis* and *Jones* based on the "FCC's longstanding interpretation of 'call' to include text[s]." *See* ECF 14 at 8-9. However, every FCC interpretation prior to 2023 was rendered under the FCC's Section 227(b) rulemaking authority which, unlike the rulemaking authority under Section 227(c), is unlimited in time and scope. Section 227(c) has a separate and much more limited grant of authority to the FCC—and the time for such interpretation ended in 1992. The FCC did not expressly interpret the term "call" under Section 227(c) to cover "texts" until 2023. *See In Re Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the TCPA of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 F.C.C. Rcd. 12247, 12256-57 (2023).

In any event, the FCC's interpretation is not dispositive. While Plaintiff is correct that *McLaughlin* allows lower courts to afford "respect" to FCC

interpretations, it does **not** instruct courts to afford any **deference** to FCC interpretations—particularly if the FCC lacks authority in the first place. *See* 145 S. Ct. at 2015; *see also Davis*, 2025 WL 2491195, at *4. Respect to agency interpretations is only warranted "when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 386 (2024); *see also Davis,* 2025 WL 2491195, at *1 ("Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."). The interpretation proposed by Plaintiff is not "contemporaneous" or "consistent" with the TCPA's enactment or the FCC's short-term rulemaking authority under Section 227(c). Even then, the FCC did so without authority, without a proper notice and comment process, and arbitrarily and capriciously.

Plaintiff's authorities on this point are inapposite, as they all discuss whether a cell phone is "residential" under the TCPA and do not address whether the FCC exceeded its limited rulemaking authority under Section 227(c). *See* ECF 14 at 11-12 (citing *Harriel*, *Wilson*, *Lirones*, and *Lyman*).

Finally, while some district courts in other circuits have reached a different conclusion, those holdings are not persuasive. In *Wilson v. Skopos Fin., LLC*, the court relied heavily on FCC authority relating to Section 227(b), which is not at issue

here. *See* 2025 WL 2029274, at *4 (D. Or. July 21, 2025). In *Wilson v. Medvidi Inc.*, the court held that the "plain meaning of the text" refers to both oral and written communications, despite that fact that Section 227(c) does <u>not</u> reference the words "text messages" or "SMS" at all and could not have, as they did not yet exist. *See* 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025). *Jones*, *Davis*, and *El Sayed*, which are based on the plain language of the statute, are more persuasive.

## II. Plaintiff Fails to Plausibly Allege Any Theory of Liability Against MCM.

Plaintiff's Opposition focuses only on <u>direct</u> TCPA liability. *See* ECF 14 at 14-16. By not addressing vicarious liability, Plaintiff has conceded the issue. *See Escue v. United Wholesale Mortg., LLC*, 2025 WL 2807314, at *25 (E.D. Mich. Sept. 30, 2025) (argument not addressed in opposition to motion to dismiss has been waived.).

Plaintiff fares no better at defending her conclusory and contradictory direct TCPA liability allegations. Instead, Plaintiff doubles down on the content of the subject texts and concludes that "[w]hether MCM sent the texts directly or through an agent is a factual question for discovery, not a basis for dismissal." ECF 14 at 2. Not so. The Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

Plaintiff's Opposition ignores the cases cited in the Motion, instead relying entirely upon cases in which (i) the caller identified themselves as calling "from" the defendant; (ii) the plaintiff called the number back and spoke to the defendant; or (iii)

the calls originated from a phone number belonging to the defendant. *See* ECF 14 at 14-15 (citing *Bradshaw*, *Katz*, *Smith*, *Stemke*, *Marks*, *Taylor*, *Slominski*). Those facts are not present here. Contrary to Plaintiff's contention, the only fact alleged here is that the texts mentioned MCM's products. However, this content alone is insufficient to plausibly allege direct TCPA liability. *See* ECF 8 at 13-14 (citing cases).

### III. Plaintiff Fails to Plausibly Allege Other Elements of Her DNC Claim.

Plaintiff's remaining arguments to avoid dismissal are equally unavailing.

**First**, as discussed in the Motion, Plaintiff cannot plausibly allege the subject phone number is the "primary means of reaching [her] at [her] residence" because she has made identical allegations in other TCPA cases involving a ***different*** phone number. *See* ECF 8 at 18.[3] Plaintiff's reliance on *Gill v. Align* is inapposite. That case did not involve a plaintiff that had multiple "residential" numbers. Plaintiff does not cite any authority to support her contention that Section 227(c) protects "residential subscribers" regardless of how many "residential" numbers they may have.

**Second**, Plaintiff contends that whether she has an "established business relationship" with MCM "is an affirmative defense, not an element of" Plaintiff's prima facie DNC claim. ECF 14 at 19-20. But Plaintiff tellingly does not address *Gillam*, which dismissed a TCPA DNC claim on this very basis. *See* ECF 8 at 19-20

---

[3] Plaintiff contends that this number is primarily used by her minor child. ECF 14 at n.4. The Court should disregard this contention, as it is not alleged in the Complaint. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).

(citing *Gillam*). Plaintiff's reliance on *Bridging Communities* and *Jewell* is misplaced, as neither case addresses the pleading standards for plausibly alleging a "telephone solicitation," as MCM raises here. ECF 14 at 19-20. Plaintiff does not allege whether she had an established business relationship with MCM. Thus, the Court cannot reasonably infer that Plaintiff received a "telephone solicitation."

IV.    **Alternatively, Plaintiff's Class Allegations Should Be Stricken.**

Plaintiff's counterarguments regarding MCM's request to strike her facially uncertifiable class allegations (*see* ECF 8 at 20-25) lack merit, as shown below.

**First**, as the Motion shows, Plaintiff's class definition is impermissibly fail-safe because this Court would have to make several merits-based inquires to determine membership in the proposed class as pled. *See* ECF 8 at 21-22. In response, Plaintiff argues her proposed class definition is not fail-safe because she did not expressly use the word "consent" in her definition. ECF 14 at 22. However, Plaintiff's argument ignores the fact that Plaintiff alleges the text messages she allegedly received were "telephone solicitations." The definition of "telephone solicitation" inherently turns on issues of consent and established business relationships. Indeed, a call is not a "telephone solicitation" if, among other things, the plaintiff provided their prior express invitation or permission to receive the call or had an established business relationship with the caller. *See* 47 C.F.R. § 64.1200(f)(15).

The recent *Nichols* decision is instructive on this point. *Nichols v.*

*eHealthInsurance Serv., Inc.*, 2025 WL 689721, at *4 (N.D. Cal. Mar. 3, 2025). There, the district court recognized that "[a] 'telephone solicitation' [as defined by the TCPA] is not just a telephone call. Rather, the TCPA's implementing regulations define 'telephone solicitation' to exclude calls made with consent or where there is an established business relationship between the caller and the called party." *Id*. at *5 (citing 47 C.F.R. § 64.1200(f)(15)). Consequently, the court found that, although the proposed class definition did not expressly include the word consent, it could not "determine who is a member of the class without evaluating the merits of each potential class member's claim, including evidence regarding consent and whether there was an established business relationship." *Id*. Thus, the court held that the class as pled was fail-safe and "appropriate to strike it at the pleading stage." *Id*.

Plaintiff's cited authorities in this regard are inapposite, as neither analyzed or addressed whether the proposed class definition was fail safe. *See Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014).

**Second**, Plaintiff argues that whether a phone number is "residential" is not a basis to deny certification. Plaintiff is mistaken. As one district court recently held, "the residential nature of the class members' phone lines and the fact-specific nature of the inquiry suggest that this will become a central issue at trial." *See Schmitendorf vs. Juicy's Vapor Lounge, Inc.*, 2025 WL 2966205, at *9 (D. Kan. Oct. 21, 2025)

(denying class certification of TCPA DNC claim). Indeed, there are several fact-intensive inquiries that guide this inquiry, including, among others: "whether plaintiffs have held out to the public or advertised their phone numbers for business purposes," "whether, and the extent to which, plaintiffs use their phones for business transactions or employment," and "whether, and the extent to which, plaintiffs' employers (or other business entities) pay for or reimburse plaintiffs for their phone bills." *Id*. The factual inquiries inherent in determining "residential" classification—an essential element of a National DNC Registry claim—are apparent even at the pleading stage. Thus, the Court may properly (and should) strike Plaintiff's class allegations.

Dated: October 27, 2025                    Respectfully submitted,


                                           By: /s/ Madelaine A. Newcomb
                                           **MANATT, PHELPS & PHILLIPS, LLP**
                                           Madelaine A. Newcomb (IL Bar No. 6322725)*
                                           151 N. Franklin Street, Suite 2600
                                           Chicago, Illinois 60606
                                           Telephone: (312) 529-6300
                                           Email: mnewcomb@manatt.com

                                           Jonathan F. Karmo
                                           **Howard & Howard PLLC**
                                           450 W 4th St
                                           Royal Oak, MI 48067
                                           Telephone: (248) 723-0325
                                           Email: jfk@h2law.com

                                           *Attorneys for Defendant*


*Admitted to E.D. Mich. Bar

-11-

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 27, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Madelaine A. Newcomb*