

**User Name:** Anthony Paronich
**Date and Time:** Thursday, November 13, 2025 12:39  PM EST
**Job Number:** 267944248

## Document (1)

1. *Mujahid v. Newity, LLC*
   **Client/Matter:** -None-
   **Search Terms:** Newity Mujahid
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |

No *Shepard's* Signal™
As of: November 13, 2025 5:39 PM Z

# Mujahid v. Newity, LLC

United States District Court for the Northern District of Illinois, Eastern Division

November 10, 2025, Decided; November 10, 2025, Filed

No. 25 C 8012

**Reporter**

2025 U.S. Dist. LEXIS 221088 *; 2025 LX 517816

Sana *Mujahid*, Plaintiff, v. *Newity*, LLC, Defendant.

## Core Terms

text message, telephone, telephone call, encompass, telephone solicitation, message, residential, entity

**Counsel:** [*1] For Sana *Mujahid*, Plaintiff: Anthony Paronich, Paronich Law, P.C., Hingham, MA USA.

For *Newity*, LLC, Defendant: Aaron Paul Heeringa, LEAD ATTORNEY, Manatt, Phelps & Phillips, LLP, Chicago, IL USA.

**Judges:** HON. JORGE L. ALONSO, United States District Judge.

**Opinion by:** JORGE L. ALONSO

## Opinion

### MEMORANDUM OPINION AND ORDER

Plaintiff alleges that *Newity* violated 47 U.S.C. § 227(c)(5) of the Telephone Consumer Protection Act ("TCPA") because Plaintiff's cell phone number is on the national do-not-call registry, and Plaintiff received at least two text messages that identified *Newity* by name and promoted *Newity*'s financial offerings. R. 20 ¶¶ 2, 13-20. *Newity* moves to dismiss on two grounds: first, that § 227(c)(5) does not apply to text messages, and second, that Plaintiff failed to allege a theory of liability against *Newity*. R. 22. *Newity*'s motion is denied.

### Legal Standard

A Rule 12(b)(6) motion "tests whether the complaint states a claim on which relief may be granted." Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must provide "a short and plain statement of the claim" and must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted). Facial plausibility exists when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the [*2] defendant is liable for the misconduct alleged." Id. at 678. In deciding a motion to dismiss, the Court "accept[s] the well-pleaded facts in the complaint as true and draw[s] reasonable inferences in the plaintiff's favor." Esco v. City of Chicago, 107 F.4th 673, 678 (7th Cir. 2024).

### Discussion

**1.** Section 227(c)(5)

The TCPA imposes restrictions on telephone solicitations. Under § 227(b)(1)(A), for example, it is prohibited "to make any call" using an "automatic telephone dialing system" to "any emergency telephone line." Under § 227(b)(1)(B), for example, it is prohibited "to initiate any telephone call to any residential telephone line

using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." And under § 227(c)(5), the TCPA provides a private right of action for a person to seek damages if she has "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." The TCPA authorizes the Federal Communications Commission ("FCC") to "prescribe regulations to implement methods and procedures for protecting the privacy rights" set forth in the TCPA. 47 U.S.C. § 227(c)(2). Relevant to § 227(c)(5), the FCC promulgated 47 C.F.R. § 64.1200(c)(2) which states that "[n]o person or entity shall initiate any telephone [*3] solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

There is no dispute that Plaintiff is a residential telephone subscriber registered with the do-not-call registry, and that she received at least two text messages. **Newity** argues that the private right of action under § 227(c)(5) does not apply to text messages because § 227(c) mentions "telephone call[s]" but "does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." R. 23 at 10 (citations omitted). In essence, **Newity** argues that the phrase "telephone call" encompasses only voice calls. *See id.*

The Court finds that the phrase "telephone call," as used in § 227(c), encompasses "text messages" for the following reasons. First, interpreting § 227(c) to include text messages is supported by the statute's plain language. The "starting point for interpreting a statute is the language of the statute itself." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 56, 108 S. Ct. 376, 98 L. Ed. 2d 306 (1987)* (citations omitted). And "unless otherwise defined, words will be interpreted as taking their [*4] ordinary, contemporary, common meaning." *Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979)*. Although **Newity** is correct that § 227(c) does not use the term "text message," this is hardly surprising given that the statute was enacted in 1991, before the first-ever text message was sent in 1992. *See Keating v. Peterson's Nelnet, LLC, 615 F. App'x 365, 370 (6th Cir. 2015)* ("[T]he first text message was not sent until December 3, 1992, almost a full year *after* the December 20, 1991, enactment of the TCPA."). As such, the Court examines the plain meaning of the phrase "telephone call." Webster's Dictionary defines a "call" in this context as "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953-54 (9th Cir. 2009)* (citing Webster's Third New International Dictionary 318 (2002)). The Court finds that a text message falls within this definition.

Second, interpreting § 227(c) to include text messages is consistent with the text of § 227 as a whole. *See River Road Hotel Partners, LLC v. Amalgamated Bank, 651 F.3d 642, 649 (7th Cir. 2011)* (citations omitted) ("When interpreting statutory language, the meaning attributed to a phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). The Supreme Court has held that when a "text message [is sent] to a cellular telephone, it is undisputed [*5] [that it] qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*. And the Seventh Circuit has held more broadly, though still in the context of § 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Restaurants, Inc., 949 F.3d 354, 356 (7th Cir. 2020)*. The fact that the term "call" as used in § 227(b) encompasses "text messages," supports the interpretation that the term "call" as used in § 227(c) also encompasses "text messages." *See Pulsifer v. United States, 601 U.S. 124, 149, 144 S. Ct. 718, 218 L. Ed. 2d 77 (2024)* ("In a given

statute, the same term usually has the same meaning.").

Third, interpreting § 227(c) to include text messages is confirmed by the purpose and context of the TCPA. "The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" Satterfield, 569 F.3d at 954 (citing S. Rep. No. 102-178, at 1 (1991)). The core of § 227(c) is its prohibition of "telephone solicitations." See 47 U.S.C. § 227(c)(1). And the statute defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). "This language [*6] makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." Wilson v. MEDVIDI Inc., 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025); see also Abboud v. Circle K Stores Inc., 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) ("The purpose of a text or call determines whether it qualifies as a telephone solicitation."). Given Congress's expressly stated goal "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), "it strains belief to suggest that Congress silently determined that [] oral messages were more invasive or objectionable than written ones." Wilson, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3.

Fourth, interpreting § 227(c) to include text messages is consistent with guidance from the FCC. See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 155, 145 S. Ct. 2006, 222 L. Ed. 2d 405 (2025) ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."). The FCC has stated that § 227(b) "'encompass[es] both voice calls and text calls.'" Sagar v. Kelly Auto. Group, Inc., 2021 U.S. Dist. LEXIS 227781, 2021 WL 5567408, at *4 (D. Mass. Nov. 29, 2021) (citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C.R. 14014, 14115 (2003)). Likewise, the FCC has stated that § 227(c) includes text messages. See In the Matter of Emanuel "Manny" Hernandez, 33 F.C.C.R. 12382, 2018 WL 6830220 at *1 (F.C.C. 2018) (finding that Hernandez violated § 227(c) because it is "illegal for persons or entities, including advertisers and marketers, [*7] to make marketing calls to telephone numbers listed on the [do-not-call registry and this] prohibition includes both voice calls and text messages.").

Fifth, interpreting § 227(c) to include text messages is consistent with numerous decisions by other district courts on this issue. See, e.g., Pariseau v. Built USA, LLC, 619 F. Supp. 3d 1203 (M.D. Fla. 2022); Wilson, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295; Sagar, 2021 U.S. Dist. LEXIS 227781, 2021 WL 5567408. It is true that certain district courts have addressed this issue and found otherwise. See, e.g., Jones v. Blackstone Med. Servs., LLC, 2025 U.S. Dist. LEXIS 138371, 2025 WL 2042764 (C.D. Ill. July 21, 2025). But other district courts have taken for granted that § 227(c) encompasses text messages without an in-depth analysis. See, e.g., Evers v. Campaignsidekick, LLC, 2025 U.S. Dist. LEXIS 201112, 2025 WL 2896818, at *4 (N.D. Ill. Oct. 10, 2025) ("[Defendant] concedes that a text message is also a "call" for [the § 227(c)(5)] claim."); Connor v. Servicequick Inc., 2025 U.S. Dist. LEXIS 199578, 2025 WL 2855393, at *2 (D. Colo. Oct. 8, 2025) (citations omitted) (reading § 227(c)(5) as providing a private right of action for a "person who has received more than one telephone call [or text message]."). Ultimately, the Court's interpretation is consistent with the weight of authority.

In sum, nothing in the text, structure, or purpose of the TCPA suggests a distinction between an unsolicited voice call and an unsolicited written text message. The Court concludes that a "telephone call" as used in § 227(c) encompasses the types of text messages received by Plaintiff.

### 2. Allegations of Liability

As stated above, § 227(c)(5) of the TCPA provides a private right of action for a person **[*8]** to seek damages if she has "received more than one telephone call within any 12-month period *by or on behalf* of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). As alleged and as shown by a screenshot in the amended complaint, the text messages identified *Newity* by name and promoted *Newity*'s financial offering by containing a link to a webpage managed by *Newity*. R. 20 ¶ 15. As stated above, the Court must accept well-pleaded facts as true and draw reasonable inferences in a plaintiff's favor when deciding a motion to dismiss. Here, the Court makes a reasonable inference either that *Newity* sent the text messages or that another entity did so on *Newity*'s behalf.

### Conclusion

For the reasons stated above, Defendant's motion to dismiss [22] is denied. The parties shall file a joint status report by 11/17/25 setting forth proposed next steps and dates for this case.

**SO ORDERED**.

**ENTERED: November 10, 2025**

/s/ Jorge L. Alonso

**HON. JORGE L. ALONSO**

**United States District Judge**

End of Document